UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ELI MARTINEZ,

    Plaintiff,

v.   Civ. No. 21-796 MIS/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION ON PLAINTIFF'S MOTION TO REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 20] ("Motion"). The Motion is fully briefed, *see* ECFs 24 ("Resp."), 28 ("Reply"), and the Court has meticulously reviewed the entire record. As explained below, the Court concludes that the Administrative Law Judge (ALJ) did not err in either (1) finding that Plaintiff could follow "simple instructions" and maintain an appropriate work pace for "two hours" or (2) his consideration of the evidence of Plaintiff's headache symptoms. Consequently, the Court recommends[1] that the Motion be denied and that this case be dismissed with prejudice.

**I.   BACKGROUND**

Plaintiff is 50 years old and lives alone in his mobile home in Chimayo, New Mexico. *See* Administrative Record [ECF 15 through ECF 15-14] ("AR") at 1, 309, 320, 1209–10. He asserts that he has disabling impairments, including "severe PTSD related to false charges about sexually molesting his youngest daughter." *Id.* at 1283 (also noting a "[b]rief period of incarceration w[ith]

---

[1] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's January 9, 2023, Order of Reference. ECF 34.

complete exoneration later" and that the "incident was reported in the local newspaper").[2] Plaintiff has an 11th grade education and was previously employed as a firefighter, meter reader, construction worker, and pipe fitter. AR at 322, 416, 1187. In August 2015, at age 44, he applied for disability benefits, representing that as of May 1, 2012 (age 41), he could no longer work due to the combination of his alleged mental conditions (e.g., depression, anxiety, PTSD, concentration problems, and nightmares) and physical conditions (e.g., right arm and neck numbness, gout, and insomnia). AR 1278–79.

> The relevant procedural aspects of the case, which the parties do not dispute, are as follows:
>
> After holding a hearing [in May 2018[3]] an ALJ denied [Plaintiff's] claims in [November] 2018. The Appeals Council denied Plaintiff's request for review of [this] 2018 decision . . . , [and] [i]n July 2019, Plaintiff filed suit in federal court. In February 2020, the district court found reversible error in the ALJ's 2018 decision related to the ALJ's finding that jobs existed in significant numbers in the national economy that Plaintiff could perform, and remanded his case for further proceedings.
>
> While his district court case was pending, Plaintiff filed another application for DIB [disability insurance benefits] and SSI [supplemental security income]. Pursuant to the district court's remand order, the Appeals Council remanded Plaintiff's original claims back to an ALJ, and also ordered that Plaintiff's 2015 and 2019 claims for DIB and SSI be consolidated. On remand, an ALJ held a hearing in 2020 and issued a decision in December 2020, again finding that Plaintiff did not meet the . . . standards for disability under the Act. [In June 2021,] [t]he Appeals Council denied his request for review, making the 2020 ALJ decision [AR 1175–1189] the agency's final decision for purposes of judicial review.

Resp. at 1–2; Mot. at 1; Reply at 1–2. In August 2021, Plaintiff sought review this Court of the Commissioner's decision. ECF 1.

---

[2] *See also* Wheeler Cowperthwaite, *Accused Molester Relinquishes Parental Rights, Charges Dropped*, RIO GRANDE SUN (Jan. 29, 2015), https://www.riograndesun.com/news/cops_courts/accused-molester-relinquishes-parental-rights-charges-dropped/article_2bbcf374-fe15-571d-8c39-a00fb2537b1b.html (commenting that Plaintiff "had the first-degree rape charges against him dropped Jan. 5 [2015] in [state] district court, after he agreed to surrender his parental rights" to his then six-year-old daughter—but separately observing that "in a 2010 sexual molestation case in Santa Fe County," Plaintiff "pleaded guilty to attempt to commit sexual contact of a child").

[3] At this hearing, Plaintiff amended his alleged onset of disability date to April 22, 2014, the date of the earliest medical evidence of record. AR 1298.

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish his inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the Social Security Administration (SSA) uses a five-step sequential evaluation process. *E.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citing 20 C.F.R. § 416.920). The first four steps require the claimant to show that (1) "he is not presently engaged in substantial gainful activity," (2) "he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents him from performing his past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5. However, the claimant reassumes the burden once he seeks judicial review. *Id.* at 146 ("An individual shall not be considered . . . disable[ed] unless he furnishes such medical and other evidence . . . as the [Commissioner] may require.").

### B. Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (internal citations omitted)

("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported his findings with substantial evidence, the Commissioner's decision stands. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [he] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of

the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Put differently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court [c]ould justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

### III. PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ committed reversible error because two of the ALJ's findings—that Plaintiff had moderate limitations in his abilities to (1) "understand, remember, or apply information" and (2) "maintain concentration, persistence, and pace"—were not properly "account[ed] for" in the ALJ's step-four "residual functional capacity" (RFC) finding. *Id.* at 7–9 (observing that this RFC finding limited Plaintiff to (1) "understand[ing], remember[ing], and carry[ing] out *simple instructions*" and (2) "maintain[ing] concentration, persistence, and pace for *two hours*" (emphasis added) (quotation omitted)); Reply at 1–2.

Plaintiff also contends that the ALJ committed harmful error in failing to properly evaluate and explain the legal significance of Plaintiff's headaches, which the ALJ had found to be a "severe impairment." Mot. at 9–10; Reply at 2. Specifically, he argues that "the severe headache impairment at step two disappear[ed] at step four, without further discussion related to the evidence." Mot. at 10.

## IV. ALJ'S DECISION AND FINDINGS

Having followed the SSA's five-step process and after "careful consideration of all the evidence," the ALJ found that Plaintiff was not "disab[led] within the meaning of the Social Security Act" at all relevant times. AR at 1189.

### A. Steps One Through Three

At step one, the ALJ concluded that Plaintiff ceased all substantial gainful activity on or about April 22, 2014—the alleged onset of his disability. AR at 1177. At step two, the ALJ concluded that Plaintiff had the following severe impairments: "major depressive disorder; [PTSD]; generalized anxiety disorder; dysthymia; somatic symptom disorder; cervical spondylosis with facet arthropathy; lumbar degenerative disc disease; gout; and headache." *Id.* at 1178.[4] The ALJ, however, concluded at step three that none of these impairments, individual or collectively, met the severity of the "listed impairments." *Id.* at 1178–80. In relevant part, the ALJ made the following findings in support of his step-three conclusion:

> I note that SSR 19-4p directs that there is no listed impairment for migraine headaches. I have considered whether the [headache] condition equals a listing, however, the evidence of record does not support such a conclusion.
> . . .
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings . . .
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant reported forgetfulness to treating sources (Ex. 40F/1). The claimant demonstrated reduced recall during a Montreal cognitive assessment (Ex. 40F/3). The examiner, however, was not confident in the veracity of this assessment. Outside of this instance, the claimant generally demonstrated intact remote memory or no deficit was noted (Ex. 8F/4, 14F/42, 22F/6, 31F/7, 13, 19-20, 42F/8). He also regularly demonstrated average fund of knowledge. Therefore, the claimant has not demonstrated more than a moderate limitation in understanding, remembering or applying information.
> . . .

---

[4] *See also* AR at 1178 (observing that a "severe impairment" is any impairment that "cause[s] more than a minimal effect on the claimant's ability to perform basic work activities" (citing 20 C.F.R. 404.1520(c); SSR 86-8)).

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant's symptoms related to his mental health impairments can be expected to negative[ly] affect his ability for concentrating, persisting, and maintaining pace. Significantly, however, the claimant regularly demonstrated intact attention and concentration (Ex. 8F/4, 14F/42, 22F/6, 31F/7, 13, 19-20, 42F/8). During the consultative examination, the claimant also had intact calculations (Ex. 37F/4). Therefore, the claimant has not demonstrated more than a moderate limitation in concentrating, persisting, and maintaining pace.
> …
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria [for determining whether a claimant's mental impairment(s) satisfy the listings] are not satisfied.
> …
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning . . . [and] reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

*Id.* at 1179–80.

### B. Step Four

The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause his alleged symptoms," the record did not support the subjective symptoms that Plaintiff described to the SSA. *Id.* at 1181. In relevant part, the ALJ found that Plaintiff had the RFC to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to . . . [accomplish various physical tasks] and [1] carry out simple instructions and make commensurate work related decisions in a work setting with few workplace changes . . . [2] and maintain concentration, persistence, and pace for two hours at a time during the work day with normally scheduled breaks.

*Id.* at 1180. In support of this RFC, the ALJ further found:

> [The claimant] testified that he takes oxycodone for pain . . . . [and] a muscle relaxer for his back. . . . He reported staying home and inside due to his migraines.

7

> He experiences pressure due to the headaches.
> …
>
> The objective medical evidence establishes the claimant's cervical degenerative disc disease, lumbar degenerative disc disease, gout, and headache disorder. . . .
>
> The evidence, however, does not support the severity of the claimant's alleged limitations.  The record indicates the claimant complained of neck pain, low back pain, tingling in his right upper extremity, and headaches.  The claimant was prescribed medication . . . . [and] also attempted other treatment modalities . . . .  The claimant reported improvement with the exercises he learned in physical therapy. . . . He even indicated that headaches improved with Topamax. . . .
>
> The claimant also has a history of mental impairments; however, the medical evidence is equally inconsistent with the alleged mental and social limitations.  The record indicates the claimant complained of irritability, mood changes, anxiety, depression, and forgetfulness.  The claimant was prescribed [a number of] medication[s] . . . [and] attempted other treatment modalities including individual therapy.  Significantly, the record includes reports of stability and doing well with his treatment.  Occasionally, irritability, anxious or depressed mood, constricted affect, and decreased psychomotor activity were observed.  Otherwise, mental status examinations generally revealed benign signs including . . . alert and oriented to person, place, and time, intact remote memory, intact attention and concentration, average fund of knowledge, cooperative demeanor, average to good eye contact, clear speech, average activity, normal thought content, linear and logical thought processes, good impulse control, good insight, and good judgment . . . .
> . . .
>
> The claimant also participated in a psychological consultative examination that included signs inconsistent with the alleged mental limitations . . . [and which showed] no deficits in immediate recall, recent or remote memory.
> . . .
>
> [T]he opinion of the State agency psychological consultants from the August 2015 application [is assigned significant weight].  [These consultants] opined that the claimant has a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors . . . [and] can understand, remember, and carry out simple instructions [and] complete tasks at an acceptable pace . . . .  The consultants reached their assessment after reviewing the entirety of the record available to them.  They provided adequate support for their opinion by citing to the claimant's treatment notes.

*Id.* at 1181–84 (extensive citations omitted).  The ALJ also discussed, *inter alia*, the weight he

gave to the opinions of other medical professionals—including others who also expressly opined

8

on Plaintiff's abilities to "understand, remember, and carry out instructions" and "concentrate, persist, [and] maintain pace"—as well as a third-party statement and a "global assessment of functioning" score. *Id.* at 1184–87. In light of this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work. *Id.* at 1187–88.

### C. Step Five

Nonetheles, the ALJ found that in light of Plaintiff's "age, education, work experience, and residual functional capacity," there were "jobs that exist in significant numbers in the national economy that [he] can perform," such as marker, routing clerk, and collator operator. *Id.* at 1188–89. Consequently, he found that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 1189.

## V. DISCUSSION

### A. ALJ's Step-Four RFC Findings Were Not Erroneous

Plaintiff argues that the ALJ's step-four RFC findings on two categories (i.e., that Plaintiff had the ability to "understand, remember, and carry out *simple instructions*" and "maintain concentration, persistence, and pace for *two hours*") amount to reversible legal error because the RFC findings did not properly "account for" the ALJ's step-three finding that Plaintiff had "moderate" limitations in these categories. Mot. at 7–9. The Court disagrees.

As a preliminary matter, the Court observes that the ALJ's RFC findings *did* "account for" these two step-three moderate limitations—just not in the way Plaintiff had hoped. Indeed, the RFC findings conducted "a *more detailed* assessment of the areas of [Plaintiff's] mental functioning"—and those findings expressly "reflect[ed] the degree of limitation [that the ALJ] found in the [step-three] 'paragraph B' mental function analysis." AR at 1180 (emphasis added); *see also id.* at 1180–87 (containing the more detailed assessment). Furthermore, in this more

9

detailed assessment of Plaintiff's precise limitations, the ALJ limited—one might even say *moderately limited*—Plaintiff to following "simple instructions" and maintaining an appropriate work pace for "two hours." *Id.* at 1180. And the ALJ found such limitations after expressly considering and weighing the evidence regarding Plaintiff's abilities to follow instructions and maintain the appropriate work pace. *See id.* 1179–86; *supra* Section IV(B).[5]

As discussed below, these RFC findings were not erroneous because they followed correct legal standards and were supported by substantial evidence.

### 1. Findings Complied with Correct Legal Standards

To begin, "an ALJ's RFC assessment [is *not* required] to mirror his step three-findings." *Beasley v. Colvin*, 520 F. App'x 748, 754 n.3 (10th Cir. 2013) (unpublished). In fact, Plaintiff's argument that the ALJ must either mechanically mirror the step-three findings in the RFC or explain the omission "has been rejected by the Tenth Circuit multiple times." *Trenton L. v. Kijakazi*, Civ. No. 21-117 SCY, 2022 U.S. Dist. LEXIS 131296, at *7–10 (D.N.M. Jul. 25, 2022) (citing *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747-48 (10th Cir. 2013) (unpublished); *Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) (unpublished); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished)); *see also Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (observing that courts must "exercise common sense" in reviewing an ALJ's decision (quotation omitted)); *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (concluding that "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the

---

[5] To the extent Plaintiff is arguing that the ALJ should have "accounted for" the *evidence* of these limitations differently than he did, the Court can "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold*, 718 F.3d at 1262.

RFC assessment").[6]

### 2. Findings Supported by Substantial Evidence

As noted, "[t]he standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." *Maes*, 522 F.3d at 1096. Thus—because the ALJ did not commit legal error by not mechanically mirroring the step-three findings—his RFC findings with respect to these two categories are valid so long as they are supported by substantial, i.e., "more than a mere scintilla" of, evidence. *Biestek*, 139 S. Ct. at 1154. And Plaintiff does not appear to argue—and certainly does not expressly do so—that the RFC findings on these two categories lacked substantial evidentiary support. *See* Mot.; Reply; *cf. United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)). Nevertheless, the Court finds that more than a mere scintilla of evidence supported the ALJ's findings with respect to these two categories—including evidence that the ALJ considered from the "mental status examinations," the "psychological consultative examination" and the "opinion of the State agency psychological consultants from the August 2015 application." AR at 1180, 1183–84; *see supra* Section IV(B).

In sum, the RFC findings that Plaintiff had the ability to "understand, remember, and carry out *simple instructions*" and "maintain concentration, persistence, and pace for *two hours*" were not erroneous because they followed correct legal standards and were supported by substantial

---

[6] In both the instant case and the *Trenton* case, Plaintiff's counsel cited to *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014) in support of her argument that a moderate limitation at step three must be "accounted for" in this manner at step four. *See* Mot. at 8. But *Jaramillo* merely held that "when an ALJ places 'great weight' on a physician's opinion, the ALJ cannot then incorporate some of the physician's recommended limitations into the RFC but omit others without explanation." *Trenton*, 2022 U.S. Dist. LEXIS 131296, at *9–10 (quoting *Jaramillo*, 576 F. App'x at 875–76) (holding that "the ALJ was not required to account for his own step-three findings when fashioning the RFC at step four"). As in *Trenton*, Plaintiff's counsel reads much more into *Jaramillo* than its plain language suggests, and the Court does not consider her proposed interpretation of *Jaramillo* to be a reasonable one.

11

evidence.

### B. ALJ's Consideration of Headache Evidence Was Not Erroneous

Plaintiff asserts that the ALJ erred by "not includ[ing] any discussion of how the impact of [his] headaches would affect him in the workplace." Reply at 2; Mot. at 9–10. The Court again reads the record differently.

#### 1. Applicable Legal Standards

In formulating the RFC findings, the ALJ must "describ[e] how the evidence supports each conclusion." SSR 96-8p; *see also Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (stating that an "ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence" (citation omitted)). Although "[t]he record must demonstrate that the ALJ *considered* all of the evidence, . . . an ALJ is not required to *discuss* every piece of evidence." *E.g., Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (emphasis added) (citation omitted). Instead, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.[7]

#### 2. Analysis

Plaintiff fundamentally argues that, in formulating the RFC, the ALJ erred by failing to discuss the evidence of Plaintiff's headache symptoms—particularly Plaintiff's hearing testimony. *See* Mot. at 9–10 (relying on Plaintiff's testimony that he "get[s] bad migraines" that cause "constant pressure" and require him to "stay inside and keep to [himself]" (quotation omitted));

---

[7] For example, in *Hendron*, 767 F.3d at 954-56, the Tenth Circuit held that "the ALJ's RFC determination [was] supported by a proper narrative statement" after finding that (1) the record "reflect[ed] that the ALJ considered all of the evidence," (2) the ALJ "thoroughly reviewed the medical evidence," "described the [plaintiff's] own report of her abilities," and "discussed the activities [the plaintiff] engaged in," and (3) the plaintiff "fail[ed] to demonstrate that the evidence [not explicitly discussed by the ALJ] was significantly probative."

12

Reply at 2.  Such an argument, however, is factually incorrect because the ALJ *did* discuss evidence of Plaintiff's headache symptoms when formulating the RFC—including Plaintiff's testimony that he gets "migraines" that cause him to "experience[ ] [such] pressure" that he "stay[s] home and inside."  AR 1181.  The ALJ simply found that "[t]he evidence . . . [did] not support the severity of [Plaintiff's] alleged limitations"—including those related to his "headaches." *Id.* at 1182.  Indeed, the ALJ found that "[Plaintiff's] headaches improved with [medication]" and that his examinations (both physical and mental) "generally revealed benign signs." *Id.* at 1182–83.  Thus, the ALJ not only "considered" the evidence of Plaintiff's headaches—including Plaintiff's testimony—the ALJ also "discussed" that evidence and how it supported his RFC findings. *Clifton*, 79 F.3d at 1009–10.  Accordingly, the record makes clear that the ALJ followed the correct legal standards in formulating the RFC with respect to the evidence of Plaintiff's headache symptoms. *Id.*

Plaintiff points to no other potentially "uncontroverted" or "significantly probative" evidence that the ALJ somehow rejected without discussion. *Id.* at 1010; *see* Mot.; Reply.  In addition, Plaintiff does not contend that the ALJ failed to "describ[e] how the evidence support[ed] [a particular RFC finding]," SSR 96-8p, or that a particular RFC finding was otherwise unsupported by substantial evidence. *See* Mot.  To the extent Plaintiff argues that the ALJ should have weighed the headache evidence differently, the Court must again reject that argument. *Newbold*, 718 F.3d at 1262.  Likewise, to the extent Plaintiff is asserting that the RFC finding must mechanically mirror the step-two *classification* of headaches as a "severe impairment," *see* Mot. at 9–10; Reply at 2, the Court must also reject that argument—just as the Court rejected the "mirroring" argument in Section V(A)(1) above.  *See also* SSR 96-8p (providing that the ALJ must "describ[e] how the *evidence* supports each conclusion" (emphasis added)); *Barnett*, 231 F.3d 687,

689 (providing that the ALJ must "consider[ ] all the relevant *evidence* and link[ ] his findings to specific *evidence*" (emphasis added)).

In sum, the Court finds that the ALJ did not err in his consideration of the evidence of Plaintiff's headache symptoms.

## VI. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion [ECF 20] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.